UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHYLLIS A. WILLIAMS,<br><br>　　　　　Plaintiff,<br>v.<br><br>JO ANN B. BARNHART, Commissioner of<br>Social Security,<br><br>　　　　　Defendant. | Civil No.06cv1426-WQH(NLS)<br><br>**REPORT AND RECOMMENDATION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 12 & 17] |

　　Phyllis A. Williams ("Plaintiff") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g),[1] seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying her claim for Social Security Disability Insurance ("SSDI") benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 403.  This case was referred by the presiding District Judge for a report and recommendation on the parties' cross-motions for summary judgment.  *See* 28 U.S.C. § 636(b)(1)(B).  After careful consideration of the moving papers, the administrative record, and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment [Doc. No. 12] be **DENIED** and that Defendant's cross-motion for summary

---

[1] 42 U.S.C. § 405(g) provides:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party ... may obtain a review of such decision by a civil action ... brought in the district court of the United States....  The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.  The findings of the Commissioner ... as to any fact, if supported by substantial evidence, shall be conclusive.

1　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　06cv1426-WQH(NLS)

judgment [Doc. No. 17] be **GRANTED**.

## PROCEDURAL HISTORY

Plaintiff applied for SSDI benefits on February 25, 2004. [Administrative Record ("AR") at 56-8.] Plaintiff alleged onset of disability as of June 15, 2003. [AR at 56.] She claimed to suffer osteoarthritis of the knees, shoulder, neck and hand pain due to arthritis, lower back pain, obesity, diabetes, high blood pressure, and difficulty breathing. [AR at 74-5; 85-6.] On July 1, 2004, the Social Security Administration ("Administration") determined Plaintiff was not disabled and denied her request for SSDI benefits. [AR at 22.] Plaintiff requested reconsideration of her application, and on October 6, 2004, the Administration denied benefits again after reconsideration. [AR at 23-35.] On December 9, 2004, Plaintiff requested an administrative hearing before an ALJ to consider her application a third time. [AR at 36.]

On July 27, 2005, the ALJ conducted a hearing to consider the merits of Plaintiff's application. [AR at 259-94.] This hearing resulted in her application being denied by the ALJ in a written decision dated October 25, 2005. [AR at 15-21.] Plaintiff disagreed with the ALJ's decision, and on December 1, 2005 she requested an Appeals Council Review of the decision. [AR at 8.] On May 26, 2006, the Appeals Council concluded there was no basis for granting Plaintiff's request for review and affirmed the ALJ's decision, which became the final decision of the Commissioner. [AR at 3.]

On July 13, 2006, after having exhausted all administrative remedies, Plaintiff initiated this action challenging the proceedings in connection with the Commissioner adopting the ALJ's decision. (*See Plaintiff's Complaint*, Doc. No. 1.) On November 20, 2006, District Judge William Q. Hayes referred all matters in this action to the undersigned Magistrate Judge for report and recommendation. (*See November 20, 2006 Order*, Doc. No. 4.) On November 29, 2006, the Commissioner filed an Answer [Doc. No. 5] to Plaintiff's complaint, along with the Administrative Record of this matter [Doc. No. 6]. On June 1, 2007, Plaintiff filed her motion for summary judgment [Doc. No. 12], requesting that the Court reverse the ALJ's decision and remand for payment of benefits.[2] On July 30, 2007, Defendant

---

[2] The Court originally set a deadline requiring Plaintiff's motion for summary judgment to be filed on or before March 29, 2007. (*See Court's November 30, 2006 Order*, Doc. No. 7.) However, Plaintiff failed to timely file her motion, prompting the Court to schedule a Show Cause Hearing to determine whether Plaintiff's complaint should be dismissed for failure to litigate the action in a timely manner. (*See Court's April 30, 2007 Order*, Doc. No. 8.) Plaintiff's counsel filed a

1 filed a cross-motion for summary judgment and opposition to Plaintiff's motion [Doc. No. 17],
2 requesting that the ALJ's decision be affirmed.

## FACTUAL BACKGROUND

### 1. PLAINTIFF'S TESTIMONY

Plaintiff was born on April 2, 1946 and was 59 years old on the date of the ALJ hearing. [AR at 56; 262.] At the hearing, having been duly sworn by the ALJ, Plaintiff testified that she had not worked since June 15, 2003. [AR at 262.] Prior to that date, she worked as a manager of a medical claims operation at an insurance company, a position that she held for approximately eight years and required her to supervise up to seventy-two people at a time. [*Id*.] For approximately seven years prior to being a manager, she worked as a claims coordinator for an insurance company. [AR at 263.] Plaintiff testified that June 2003 marked the onset of her disability when she suffered a torn meniscus, resulting in arthroscopy and the discovery by her physician of the osteoarthritis in her knees. [*Id*.] She received hyalgan treatments in both knees, and it became difficult for her to walk. [*Id*.]

Plaintiff further testified that she takes a number of medications regularly. [AR at 264.] She stated that she receives no retirement or disability payments from her former employer, but does carry independent disability insurance. [AR at 265.] When asked by the ALJ whether she would be able to return to work but for her knee condition, Plaintiff testified that the pain in her knees has aggravated her back pain, and therefore her back pain would prevent her from being able to work. [*Id*.] When asked by her attorney, Plaintiff testified that she had to pay out of pocket to see her treating physician, Dr. Dossett, an orthopedic surgeon that her insurance company, Kaiser Permanente, would not authorize. [AR at 266.] Her insurance company then arranged for her to be treated by their orthopedic department. [*Id*.] The Kaiser physician agreed with Dr. Dossett that Plaintiff is not a good candidate for total knee replacement because of her obesity and her age. [AR at 267.]

Plaintiff testified that she uses a cane to assist her to walk every day. [*Id*.] A physical therapist at Kaiser also prescribed forearm crutches for Plaintiff's use, but Plaintiff testified that she cannot use

---

Declaration stating that the failure to file a dispositive motion resulted from inadvertent mistake related to computer problems. (*See Declaration of Thomas Roche*, Doc. No. 9.) Accordingly, the Court vacated the Show Cause Hearing and found good cause to grant a single extension of the dispositive motion filing deadline. Plaintiff was ordered to file her motion for summary judgment on or before June 1, 2007, which she did. (*See* Doc. Nos. 10 &11.)

the crutches because it intensifies the pain in her back. However, Plaintiff did state that when she attempted to use the crutches they helped relieve the pain in her knees. [AR at 267-8.] Plaintiff testified that she is unable to return to work. [AR at 268.] When asked why not, Plaintiff stated that she cannot concentrate mentally the way she needs to because of her level of pain and the medication she must take. [*Id*.] Plaintiff further stated that she does not believe she is a good candidate for an employer because she has to lie down, cannot walk or sit for long periods of time, and would have to miss work. [AR at 269.] Plaintiff testified that she has to lie down about fifty percent of her time during the day because even small chores such as laundry or cleaning cause intense pain in her back and knees. [*Id*.] Plaintiff stated that she cannot lift or carry more than ten pounds because of her arthritis. [AR at 270.] She cannot knit or decorate a cake or use a computer for any length of time. She has been told by her doctors that if she exercises she must do so in water. [*Id*.] Plaintiff testified that she can walk only about fifty feet. When she goes to the grocery store she uses an electronic cart because she cannot push a regular cart. She has a handicap placard that she has used for about eight years. [*Id*.]

Plaintiff opined that she would not be able to spend much of an eight hour workday standing or walking. [AR at 271.] She described her current knee pain on a scale of one to ten as a five, and her back pain as a nine or ten. [*Id*.] Plaintiff also stated that she has bursitis in her shoulders, and a calcification in her right shoulder that causes pain. [AR at 272.] Her shoulder pain prevents her from writing, using the computer for any length of time, and from reaching for things. [AR at 272-3.] Plaintiff testified at the hearing that she is five feet four inches in height and on that date weighed 265 pounds. [AR at 273.] Plaintiff stated that her physicians suggested that a total knee replacement would only be a suitable option if she weighed approximately 150 pounds. Plaintiff stated that she has not been able to lose weight. [*Id*.]

### 2. *MEDICAL & VOCATIONAL EVIDENCE PRESENTED*

#### A. *Medical Expert: Dr. Walter Doren*

Dr. Doren testified as a medical expert at the administrative hearing. [AR at 273-86.] Having examined Plaintiff's medical records,[3] he reported that Plaintiff has degenerative joint disease in both

---

[3] Prior to being sworn, Dr. Doren stated that he had not been presented with any objective evidence of Plaintiff's back problems, such as MRIs or X-rays of her back. [AR at 274.] Plaintiff stated that she suffered a back injury in 1986 as the result of an automobile accident. [*Id*.] Plaintiff stated that her current physician treated only her knees, and never treated

knees, verified by X-rays showing a narrowing of the medial joint spaces bilaterally consistent with osteoarthritis. [AR at 276.] Dr. Doren confirmed that MRIs of Plaintiff's left knee revealed a degenerative tear of the medial meniscus, patellar tendonosis, enchondroma, small joint effusion, and chondromalacia. [AR at 277.] Dr. Doren concluded that Plaintiff suffers from the medical condition of degenerative joint disease bilaterally in the knees. [*Id.*] Dr. Doren testified that Plaintiff's medical condition does not meet or equal the listings per Social Security regulations for disability. [AR at 278.] Dr. Doren did conclude, however, that Plaintiff's Residual Functional Capacity ("RFC") is significantly limited. [AR at 279.] Specifically, Dr. Doren testified that he generally agreed with the diagnostic opinions of Plaintiff's treating physician and examining physician, detailed below; Dr. Doren opined that Plaintiff could sit for six out of eight hours per day with normal breaks and could lift ten pounds occasionally and less than ten pounds frequently. [AR at 283.]

Upon examination by Plaintiff's attorney, Dr. Doren testified that due to her shoulder impingement, Plaintiff is restricted to only occasional overhead use of her right arm and occasional front use at or below shoulder level. [AR at 283-4.] In his opinion, Plaintiff requires a sit/stand option during her day due to the condition of her knees, which would limit her ability to climb stairs frequently and to bend or stoop. [AR at 285.] Dr. Doren confirmed that Plaintiff's stated pain in her knees is consistent with her medically diagnosed condition. [AR at 286.]

      B. *Vocational Expert: Dr. Richard Jones*

Dr. Richard Jones testified as a vocational expert at the administrative hearing. [AR at 286-94.] Having reviewed the record evidence, he reported that Plaintiff has past relevant work activity with the exertional requirements and skill levels of a sedentary, skilled occupation. [AR at 286.] Upon examination by Plaintiff's attorney, Dr. Jones testified that based upon the physical restrictions described by the medical expert Plaintiff should be able to perform her past-relevant work. [AR at 287.] Dr. Jones stated that although Plaintiff's managerial position required her to reach with her right arm for up to four hours a day, she should be able to perform the job because her reaching is unrestricted at chest level and below, where most job-related reaching and handling occurs. [*Id.*]

Plaintiff's attorney questioned Dr. Jones regarding the following hypothetical: what would the

---

her for back pain or injury. [AR at 276.]

result be if Plaintiff suffered from pain-based interference in her concentration, persistence, and pace for up to 33% of the workday on a consistent basis. [AR at 291.] Dr. Jones responded that under the terms of that hypothetical, it would be very difficult for Plaintiff to maintain employment. [*Id.*] Plaintiff's attorney also queried whether, based on Plaintiff's own testimony that she cannot stand for than five minutes at a time, cannot walk more than fifty to a hundred feet in distance at once, and is only able to lift less than ten pounds, whether she would be able to perform her past-relevant work. [AR at 293.] Dr. Jones testified that based on Plaintiff's own testimony, no, she would not be able to perform her past work. [*Id.*]

### C.    Additional Background and Medical Evidence

Plaintiff was born on April 2, 1946. [AR at 56.] She has a high school diploma and has worked in various capacities for health insurance companies for the fifteen years preceding her onset of disability. [AR at 62.] Plaintiff began treatment with Dr. Gene Dossett, an orthopedic surgeon, in August 2002. [AR at 183.] Dr. Dossett diagnosed Plaintiff with progressive left knee pain, and treated her conservatively until a June 7, 2003 MRI revealed a degenerative tear of the meniscus and degenerative joint disease. [*Id.*] On June 16, 2003, Plaintiff underwent arthroscopy of the left knee. [AR at 184.] The procedure revealed chondromalacia with fraying of the tibial articular surface. In other words, Plaintiff was suffering from a degenerative condition of the cartilage surface of the back of her left knee cap, or patella, that produces discomfort or dull pain around or behind the patella. [AR at 184-5.] Plaintiff underwent a series of Hyalgan injections in her left knee to reduce pain, which were not successful. [AR at 144-5.]

As her treating physician, Dr. Dossett completed an RFC questionnaire on February 24, 2005. [AR at 252-5.] Dr. Dossett opined that Plaintiff would continue to suffer into the future with progressive degenerative knee and spine problems. He estimated on a scale of one to ten that Plaintiff suffered pain at a level 5-6 in her left knee, at a level 4 in her right knee, and at a level 8-10 in her back while walking. He stated that Plaintiff is not a malingerer. [AR at 252.] He opined that she would never be able to climb ladders, and only rarely would be able to crouch or climb stairs. [AR at 253.] He stated that Plaintiff has no limitations using her upper extremities, and that Plaintiff needs no assistance to be ambulatory and does not need to elevate her legs. [AR at 253.] Dr. Dossett estimated that

Plaintiff's conditions would likely cause her to be absent from work one day per month. [AR at 253.] Dr. Dossett further opined that Plaintiff could sit for approximately four hours in an eight hour work day and stand for approximately two hours in an eight hour work day. [AR at 254.] He determined that Plaintiff could lift ten pounds rarely and less than ten pounds occasionally. [*Id*.]

On June 14, 2004, Dr. Thomas Dorsey examined Plaintiff at the request of the Department of Social Services. [AR at 101-5.] On that date, Plaintiff weighed 275 pounds. [AR at 102.] The range of motion on all extremities was normal, with the exception of her knees. [AR at 103.] Further flexion of her knees beyond 0-100/150 was blocked by adipose tissue. [*Id*.] Dr. Dorsey diagnosed Plaintiff with bilateral knee degenerative joint disease, right shoulder impingement syndrome, lumbar degenerative facet changes, and morbid obesity. [AR at 102-4.] Despite these medical conditions, Dr. Dorsey determined that Plaintiff could lift and carry ten pounds occasionally, less than ten pounds frequently, could stand and walk for two hours in an eight hour workday, sit for six hours in an eight hour workday, and occasionally bend and stoop. [AR at 104.] Two state agency physicians subsequently concurred with Dr. Dorsey's determinations of Plaintiff's restrictions, with the added restriction of never climbing ladders or crawling, and only reaching overhead with her right arm occasionally. [AR at 109-117; 174.]

On April 15, 2005, another treating orthopedic surgeon, Dr. Young, diagnosed Plaintiff with bilateral osteoarthritis of the knees and morbid obesity. [AR at 258.] Dr. Young determined that Plaintiff was not a good candidate for total knee replacement because of her age and her weight. Dr. Young recommended that Plaintiff lose weight. [*Id*.]

### 3. *ALJ'S FINDINGS*

After a discussion of the evidence in the record, the ALJ determined that Plaintiff was not entitled to SSI benefits. [AR at 15-21.] The ALJ found that the medical evidence demonstrates that Plaintiff suffers from degenerative joint disease of both knees, of the lumbar spine, and of both AC joints, and that the impairments are "severe" within the meaning of the Regulations. [AR at 17.] The ALJ concluded that Plaintiff's impairments were not of listing severity, however. [AR at 18.] The ALJ determined that Plaintiff retained the residual functional capacity to perform her past relevant work. [AR at 18-21.] Specifically, the ALJ concluded that Plaintiff could lift/carry ten pounds occasionally; routinely handle less than ten pounds; stand/walk for two hours or sit for six hours cumulatively within

an eight hour workday with a sit/stand option; bend or stoop occasionally; use the right upper extremity for overhead activities occasionally and for chest level or below-chest level activities regularly. [AR at 21.]

In determining RFC, the ALJ affixed little weight to Dr. Dossett's treating statement, finding that his conclusions were based on a finding that Plaintiff has a lumbosacral spine abnormality, of which there is no objective medical evidence in support. [AR at 18.] Rather, the ALJ affixed great weight to the examining statement of Dr. Dorsey, and noted that the medical expert at Plaintiff's hearing, Dr. Doren, also agreed with Dr. Dorsey's findings regarding Plaintiff's RFC. [AR at 19.] The ALJ considered the third party statement submitted by Plaintiff's daughter, who indicated that Plaintiff regularly sits at the computer, goes to church, plays cards, dusts, does laundry, and other chores. [AR at 19.] The ALJ found Plaintiff's subjective complaints of pain excessive in relation to the objective medical evidence and therefore not credible. [AR at 19.] Accordingly, the ALJ denied Plaintiff's claim for benefits. [AR at 21.]

## DISCUSSION

### *1. LEGAL STANDARD*

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits. 42 U.S.C.A. § 405(g). A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards. *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). When the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld. *Batson*, 359 F.3d at 1193. Where, as here, the Appeals Council denies a request for review, the ALJ's decision becomes the final agency decision reviewed by the court. *See id.* at 1193 n.1.

To qualify for disability benefits under the Act, an applicant must show that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months. 42 U.S.C.A. § 423(d). The Social Security regulations establish a five-step sequential evaluation for determining whether an

applicant is disabled under this standard. 20 C.F.R. § 404.1520(a); *Batson*, 359 F.3d at 1194. First, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If not, then the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of the regulations. 20 C.F.R. § 404.1520(a)(4)(ii). If the applicant's impairment is severe, the ALJ must then determine whether the impairment meets or equals one of the "Listing of Impairments" contained in the Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's impairment meets or equals a Listing, he or she must be found disabled. *Id.* If the impairment does not meet or equal a Listing, the ALJ must then determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the applicant can no longer perform past relevant work, the ALJ at step five of the evaluation must consider whether the applicant can perform any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

### 2. PLAINTIFF'S CLAIMS

Plaintiff asserts three grounds for reversal of the ALJ's decision. First, she alleges that the ALJ failed to account adequately for her morbid obesity in his five-step sequential analysis of her disability. (*Plaintiff's Memorandum in Support of Summary Judgment ("Plaintiff's MSJ")*, 6.) Second, Plaintiff argues that the ALJ erred in discounting the opinion of her treating physician that she is unable to work. (*Id*. at 8.) Finally, Plaintiff alleges that the ALJ improperly discredited her subjective complaints of pain and other symptoms consistent with her diagnosis of bilateral degenerative joint disease of the knees. (*Id*. at 9.)

#### A. The ALJ's Consideration of Plaintiff's Obesity

Plaintiff first alleges that the ALJ erred in failing to properly consider her obesity throughout the sequential disability analysis. Specifically, Plaintiff argues that "the ALJ failed to do an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment was severe." (*Plaintiff's MSJ*, 6.) Plaintiff also argues that the ALJ, after making the vague

and generalized determination that her obesity could affect her "endurance," failed to explain this finding or to incorporate any endurance-related limitations into his assessment of her RFC. (*Id.* at 7.) Defendant argues that the ALJ properly considered Plaintiff's obesity and its impact on her RFC. (*Defendant's MSJ*, 4.)

As a general matter, the Court notes that in 1999 the Social Security Administration removed obesity from the listing of impairments. 64 Fed. Reg. 46122-01.[4] As such, obesity is no longer a qualifying disability and cannot, by itself, qualify a claimant for disability benefits. *See id.*; *see also* Social Security Ruling ("SSR") 02-01.[5] Obesity may still enter into a multiple impairment analysis, but only by means of its impact upon a plaintiff's musculoskeletal, respiratory, or cardiovascular system. It must be considered in disability assessments, and remains classified as a "determinable impairment that can be the basis for a finding of disability." *Id.* In the context of obese claimants, the sequential evaluation process is augmented by the "special duty" of an ALJ to "fully and fairly develop the record and to assure that the [plaintiff's] interests are considered ... even when the [plaintiff] is represented by counsel." *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003), *quoting Brown v. Heckler*, 713 F.2d 41, 443 (9th Cir. 1983). An ALJ breaches this duty by failing properly to include a plaintiff's obesity in the sequential analysis, which can result in reversible legal error. *Id.* at 1183 (holding that it was reversible error for an ALJ to exclude obesity from sequential analysis).

The record in this case contains numerous explicit references by Plaintiff, as well as Plaintiff's treating and examining physicians, to her obesity. Plaintiff cited her obesity among her list of illnesses, injuries, or conditions on her disability report (Section 2 of her SSA 3368 Form, application for

---

[4] Stating in summary:

> "We are deleting listing 9.09, 'Obesity,' from appendix 1, subpart P of part 404, the "Listing of Impairments." Although many individuals with obesity are appropriately found 'disabled' within the meaning of the Social Security Act, we have determined that the criteria in listing 9.09 were not appropriate indicators of listing-level severity because they did not represent a degree of functional limitation that would prevent an individual from engaging in any gainful activity. However, in response to public comments, we are adding guidance about evaluating claims for benefits involving obesity to the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings."

[5] "The Secretary issues Social Security Rulings to clarify the Secretary's regulations and policy." *Bunnell v. Sullivan*, 947 F.2d 341, 346 n. 3 (9th Cir. 1991). Although they do not have the force of law, the rulings represent the Secretary's interpretation of its regulations. *Id.* The courts therefore give them deference unless they are inconsistent with the statute or regulations. *Id.*

1 benefits). [AR at 85.] Dr. Young, a treating physician, noted Plaintiff's obesity and recommended
2 weight loss. [AR at 18, *citing* Ex. 14F/2-3.] Dr. Dorsey, an examining physician, prepared a summary
3 report subsequent to an orthopedic consultation that explicitly stated that Plaintiff is morbidly obese at
4 64 inches in height and 275 pounds in weight, although in no "apparent distress." [AR at 102.] The
5 ALJ specifically elicited testimony from Plaintiff during the administrative hearing regarding her
6 obesity, including her weight on that date (265 pounds), her recent minimal weight loss, and her
7 decision not to undergo a total knee replacement at her current weight. [AR at 273.]

8 Based on the medical record, the ALJ found at step two in his sequential evaluation that Plaintiff
9 suffered from severe impairments consisting of degenerative joint disease of both knees, of the lumbar
10 spine, and of both AC joints. [AR at 17.] The ALJ did not find that Plaintiff's obesity was a "severe"
11 impairment. The ALJ does not reference Plaintiff's obesity in his written decision until his step three
12 analysis of whether Plaintiff's impairments meet or equal the Listing. [AR at 17.] However, given the
13 multiple references in the medical record, as well as at the administrative hearing, to Plaintiff's obesity,
14 under the circumstances in this case, the Court cannot conclude with certainty that the ALJ completely
15 *failed* to consider Plaintiff's obesity in step two of his sequential evaluation. Even assuming the ALJ
16 did so fail, the Court finds that he did not commit reversible error by not considering Plaintiff's obesity
17 in step two of the sequential analysis because any prejudice would have resulted in step three (listing
18 impairment determination) or step four (RFC), where as discussed below, the ALJ clearly considered
19 Plaintiff's obesity in his analysis.

20 At step three in the sequential process, because obesity is no longer a separately listed
21 impairment, a plaintiff will be deemed to meet the requirements and be considered disabled if "there is
22 an impairment that, in combination with obesity, meets the requirements of a listing." SSR 02-01p
23 (2002). Equivalence may also be determined if a plaintiff has multiple impairments, including obesity,
24 none of which meets the listing requirement, but which when viewed in the aggregate are equivalent to a
25 listed impairment. *See id*. The Rule however explains that:

26 > "[An ALJ] will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may
27 > or may not increase the severity or functional limitations of the other impairment. [The ALJ] will evaluate each case based on the information in the case record."
28

*Id*. The ALJ concluded at step three that Plaintiff's impairments did not meet, nor were they medically equivalent to, a listed impairment. [AR at 18.] The ALJ considered Plaintiff's obesity in making his determination. The ALJ cited Plaintiff's height and weight, and noted that in spite of her obesity, both a treating orthopedic surgeon and a consulting/examining orthopedic surgeon found no related distress, found Plaintiff to be fully ambulatory, and determined that Plaintiff did not have any need to elevate her legs. [AR at 17-8.] The ALJ also noted that "no physician of record has opined that [Plaintiff's] impairment is of listing severity, and the State agency medical consultants specifically concluded that [Plaintiff's] impairments were not of listing severity," and so concurred. [AR at 18.] Although obesity was observed and noted by the majority of Plaintiff's treating and examining physicians, the medical record is largely silent as to whether and how Plaintiff's obesity might have exacerbated her degenerative joint disease. The only mention is by Dr. Young, a treating physician, who determined that Plaintiff was not an ideal total knee replacement candidate secondary to age and obesity. [*Id*.] In fact, the only evidence in the record relating to her obesity are notes from doctors who observed her as being qualified as morbidly obese and recommended that she lose weight. The ALJ considered Plaintiff's obesity in determining whether she met or equaled the requirements of a listed impairment. Accordingly, the Court therefore finds that the ALJ did not err at step three in the sequential evaluation of Plaintiff's disability.

Plaintiff also argues that the ALJ erred at step four of his sequential analysis as he considered Plaintiff's obesity in making his determinations regarding RFC. According to the Social Security Rules, in evaluating obesity to determine a plaintiff's RFC, the ALJ's assessment "must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 02-01p (2002). As with other impairments, the ALJ should explain how he determined whether obesity caused any physical or mental impairments. *See id*. Further, as Social Security Ruling 96-8p (1996) provides:

> "In assessing RFC, the adjudicator must consider only limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.' While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim."

Here, the ALJ acknowledged Plaintiff's obesity during the portion of his written decision that

analyzes Plaintiff's RFC. The ALJ stated specifically that:

> "I have also carefully considered [Plaintiff's] obesity in accordance with Social Security Ruling 02-1p, and note that the claimant testified that she lost 15 pounds. I find no specific or quantifiable impact on pulmonary, musculoskeletal, or cardiac functioning. I do find that in a general way, [Plaintiff's] obesity affects her endurance."

[AR at 19.] Although the medical record before the ALJ referred to Plaintiff's obesity, and her obesity was discussed at the administrative hearing, there was no evidence before the ALJ specifically indicating that Plaintiff's obesity limits her functioning. Neither treatment notes nor any diagnoses addressed Plaintiff's limitations due to obesity. Moreover, Plaintiff did not present any testimony or other evidence at her hearing that her obesity impaired her ability to work. Even in her current motion, Plaintiff cannot point to any evidence of functional limitations due to obesity which would have impacted the ALJ's analysis. After considering the evidence, the ALJ concluded that Plaintiff has the RFC to perform a significant (though not full) range of light work, including the ability to lift and carry 10 pounds occasionally and less than 10 pounds frequently, sit for six hours per day, stand/walk for two hours per day, and the ability to reach at or below chest level with her right upper extremity. [AR at 21.] Based on the record, the ALJ adequately considered Plaintiff's obesity in his RFC determination. Plaintiff has not set forth, and there is no evidence in the record, of any functional limitations as a result of her obesity that the ALJ failed to take into account. The Court finds that the ALJ properly considered Plaintiff's obesity to the extent required, and therefore Plaintiff's first claim is without merit.

      B.  *The ALJ's Consideration of Dr. Dossett's Opinion*

   Plaintiff argues that the ALJ improperly disregarded the opinion of her treating physician, orthopedic surgeon Gene Dossett. Plaintiff contends that the ALJ's reasoning is contrary to the objective evidence and not clear and convincing. (*Plaintiff's MSJ*, 8.) Plaintiff argues that if Dr. Dossett's opinions had been considered properly, Plaintiff would have been found disabled. (*Id*.) Defendant argues that the ALJ considered Dr. Dossett's opinion and correctly rejected Dr. Dossett's assessment of Plaintiff's RFC. (*Defendant's MSJ*, 5.)

   Dr. Dossett completed an RFC Questionnaire provided to him by Plaintiff's attorney. [AR at 252-5.] In that questionnaire, he offered a diagnosis of Plaintiff's medical condition, a prognosis for her condition, and an assessment of her ability to work. [*Id*] The record contains numerous reports and

forms completed by Dr. Dossett from 2002 through 2005. However, the ALJ chose to rely on the opinion of a consulting physician, Dr. Doren, who testified as the medical expert at Plaintiff's administrative hearing. Having reviewed Plaintiff's medical records, Dr. Doren opined that Plaintiff could sit for six hours out of an eight-hour workday, as opposed to Dr. Dossett, who stated that Plaintiff could only sit for four hours in an eight-hour workday. [AR at 282-3.] Dr. Doren also opined that Plaintiff has no significant abnormality in her lumbar spine, whereas Dr. Dossett diagnosed Plaintiff's lumbar spine with progressive degenerative disease. [AR at 252; 282.]

By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians. *See* 20 C.F.R. § 404.1527. If a treating physician's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, [it will be given] controlling weight." *Id*. § 404.1527(d)(2). If a treating physician's opinion is not given "controlling weight" because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, the Administration considers specified factors in determining the weight it will be given. Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician; and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Id*. § 404.1527(d)(2)(i)-(ii).

Generally, the opinions of examining physicians are afforded more weight than those of non-examining physicians, and the opinions of examining non-treating physicians are afforded less weight than those of treating physicians. *Id*. § 404.1527(d)(1)-(2). Additional factors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; the specialty of the physician providing the opinion; and "[o]ther factors" such as the degree of understanding a physician has of the Administration's "disability programs and their evidentiary requirements" and the degree of his or her familiarity with other information in the case record. *Id*. § 404.1527(d)(3)-(6).

A treating physician's opinion that his patient is disabled or unable to work is entitled to little or no weight, because such determinations are the ultimate issue to be decided by the agency, not the

health care provider. 20 C.F.R. § 416.927(e); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). The ALJ may discount the treating physician's opinion, as long as he offers specific, legitimate reasons for doing so. *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

> The ALJ noted in his written decision:
>
> "I have carefully considered the medical source statements of record. There is a treating source statement from Dr. Dossett. He assessed [Plaintiff] with being able to sit for about 4 hours in an eight-hour workday; and stand/walk about two hours in an eight-hour workday . . . I affix little weight to Dr. Dossett's assessment as it is not supported by the objective medical evidence of record. [Plaintiff] does not have a lumbosacral spine abnormality to support the sitting limitations noted by Dr. Dossett."

[AR at 18.] The ALJ considered Dr. Dossett's opinion regarding both the presence of a degenerative condition of the lumbar spine and the affect on Plaintiff's ability to sit for more than four hours in a workday, but ultimately determined that it was not entitled to controlling weight. The ALJ determined that Dr. Dossett's opinion was unsupported by any objective medical evidence. [AR at 18-9.] The ALJ recognized that Plaintiff's medical records clearly demonstrate degenerative joint disease in both knees, but he relied on the testimony of examining physician Dr. Dorsey and medical expert Dr. Doren to conclude that Dr. Dossett's opinion was unsupported because no evidence in Plaintiff's medical record indicated a spine abnormality. The ALJ cited Dr. Dorsey's findings that:

> "Cervical spine examination showed no evidence of paravertebral spasm. Range of motion of the cervical spine was grossly normal. Lumbar spine examination showed no evidence of splinting or spasm. Range of motion of the lumbar spine was grossly normal."

[AR at 17.] The ALJ also noted that state agency consulting physicians agreed that Plaintiff is able to sit for six out of eight hours in a workday. [AR at 19.] By her own testimony at the administrative hearing, Plaintiff indicated that Dr. Dossett treated her for the condition in her knees, never for a back condition. [AR at 276.]

The ALJ offered specific, legitimate reasons for declining to give controlling weight to Dr. Dossett's opinion. *See Batson*, 359 F.3d at 1195 (ALJ did not err in giving minimal weight to treating physician's opinion that was conclusory and unsupported by objective medical

1  evidence); *Tonapetyan*, 242 F.3d at 1149 (ALJ properly rejected treating physician's opinion that
2  was unsupported by rationale or treatment notes). Additionally, the record suggests that Dr.
3  Dossett relied on Plaintiff's subjective complaints of pain in opining that she could only sit for
4  four hours in an eight-hour workday. As discussed below in further detail, the ALJ found
5  Plaintiff's subjective complaints only partially credible. When a treating physician's opinion is
6  based on subjective complaints that are found incredible, the ALJ may reject that opinion.
7  *Batson*, 359 F.3d at 1195-96; *Tonapetyan*, 242 F.3d at 1149; *Fair v. Bowen*, 885 F.2d 597, 605
8  (9th Cir. 1989). For these reasons, the Court finds no merit to Plaintiff's claim that the ALJ erred
9  in discounting the opinion of her treating physician.

10              C.    *The ALJ's Determination of Plaintiff's Credibility*

11  Plaintiff finally argues that the ALJ's RFC assessment, conducted at step four of the five-step
12  disability evaluation process, is legally flawed and not based on substantial evidence. Specifically,
13  Plaintiff contends that the ALJ incorrectly discredited Plaintiff's testimony regarding RFC and therefore
14  erroneously disregarded Plaintiff's subjective complaints of pain when determining that Plaintiff could
15  perform a range of sedentary work. (*Plaintiff's MSJ*, 9-10.) Defendant argues that the ALJ's credibility
16  findings are supported by substantial evidence and should not be disturbed. (*Defendant's MSJ*, 7-10.)

17  The ALJ examines the claimant's "residual functional capacity and the physical and mental
18  demands" of the claimant's past relevant work, 20 C.F.R. § 404.1520(e), at step four of the sequential
19  process. Although the burden of proof is on the claimant at step four, the ALJ still has the duty to make
20  the requisite factual findings to support his conclusion. *See* SSR 82-62. The RFC assessment must be
21  based on all of the relevant evidence in the record, including the effects of symptoms that are reasonably
22  attributed to a medically determinable impairment. Information about symptoms must be given "careful
23  consideration." *Id.*

24  If the ALJ finds that the claimant's testimony as to the severity of his pain and impairments is
25  unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit
26  the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *See Bunnell v.*
27  *Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc). The ALJ may consider at least the following
28  factors when weighing the claimant's credibility: "[claimant's] reputation for truthfulness,

inconsistencies either in [claimant's] testimony or between testimony and conduct, [claimaint's] daily activities, work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Social Sec. Admin.,* 119 F.3d 789, 792 (9th Cir. 1997).

In the RFC assessment, the ALJ concluded:

> "The claimant has the following residual functional capacity: lift and carry 10 pounds occasionally; routinely handle less than 10 pounds; stand/walk for two hours or sit for six hours cumulatively in an eight-hour workday with a sit/stand option; bending or stooping limited to occasionally; and overhead activities with the right upper extremity, shoulder and above level, limited to occasional, with no problems using the right upper extremity below chest level."

[AR at 21.] The ALJ considered Plaintiff's subjective complaints of pain and other symptoms and determined that, in light of the record, they were only partially credible. [AR at 19.] In making this determination, the ALJ noted Plaintiff's testimony that her hands ache due to her arthritis; she has knee pain that is a "10 out of 10;" the bursitis in her right shoulder causes pain while she plays cards or uses a computer; and she has trouble concentrating due to her various pains and the medication she takes for pain. [*Id*.] However, after considering Plaintiff's subjective complaints, the ALJ rejected her allegation that she is completely unable to work due to her impairments. The ALJ relied on the third party statement of Plaintiff's daughter, which indicated that Plaintiff is able to sit and use a computer, can sit through church services, can sit and play cards for up to an hour at a time, does laundry, dusts, loads the dishwasher, makes her bed, and shops at the store using a scooter. [*Id*.]

The ALJ determined that the status of Plaintiff's impairments did not fully support Plaintiff's allegations of pain and disabling limitations, noting that Plaintiff's complaints are disproportionate in described severity and duration to the expected severity or expected duration on the basis of her medically determinable impairments. [*Id*.] The ALJ was permitted to consider daily living activities in his credibility analysis. As the Ninth Circuit has explained, if a Plaintiff engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the Plaintiff's allegations upon making specific findings relating to those activities. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Morgan v. Apfel*, 169 F.3d 595, 600 (9th Cir. 1999) (plaintiff's ability to fix meals, do laundry, work in the yard, and occasionally care for his friend's child was

evidence of his ability to work).  The ALJ also considered the medical findings of Plaintiff's treating physician: "[Plaintiff's] symptoms include back and knee pain.  However, Dr. Dossett reported that [Plaintiff] did not have any limitations with using the upper extremities and did not need any assistive devices to assist in ambulation.  She also did not need to elevate her legs."  [AR at 18.]  Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis.

This Court will defer to the ALJ's credibility determinations when they are appropriately supported in the record by "specific findings justifying that decision."  *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986); *see also Bunnell v. Sullivan*, 947 F.2d 341, 342 (9th Cir. 1991) (en banc) (reaffirming the *Cotton* standard).  In the instant case, the Appeals Council accepted the ALJ's finding that Plaintiff's pain testimony was not fully credible.  [AR at 3.]  The ALJ thoroughly discussed the medical evidence in making his credibility finding.  Therefore, the ALJ's assessment is entitled to great deference and the Court finds no error.

## CONCLUSION

Based on a review of the record and consideration of the briefs submitted, finding Plaintiff's claims to be without merit, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment be **GRANTED** and Plaintiff's Motion for Summary Judgment be **DENIED**.

This Report and Recommendation is submitted by the undersigned Magistrate Judge to the District Judge assigned to this case, pursuant to the provision of Title 28, United States Code, section 636(b)(1).

Any party may file written objections with the Court and serve a copy on all parties on or before *September 18, 2007*.  The document should be captioned "Objections to Report and Recommendation."

Any reply to the objections shall be filed and served on or before *September 25, 2007*.

**IT IS SO ORDERED**.

DATED:  September 5, 2007

_____
Hon. Nita L. Stormes
U.S. Magistrate Judge